IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARIE GRAY and CATHY JONES, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ASHLEY HARA, in her individual capacity )<br>only, and )<br><br>JOSH KOSIOROWSKI, in his individual )<br>capacity only, )<br><br>Defendants. ) | Civ. Action No. 17-cv-425 GMS |

**MEMORANDUM**

## I. INTRODUCTION

Plaintiffs Marie Gray and Cathy Jones filed this action against Defendant Officers Ashley Hara and Josh Kosiorowski, in their individual capacities, alleging that the officers violated Plaintiffs' Fourth Amendment rights when they detained and arrested Plaintiffs and charged them with disorderly conduct. (D.I. 8.) Plaintiffs assert two claims. Count One alleges Defendants unlawfully detained Plaintiffs from the time Defendants first encountered the Plaintiffs until the time they were placed in a holding cell, thereby violating their Fourth Amendment rights. (D.I. 8 at ¶ 47–52.) Count Two alleges Defendants unlawfully detained Plaintiffs from the time the Plaintiffs were in the holding cell until their commitment to Sussex Correctional Institution. (D.I. 8 at ¶ 55–61.) Both counts were brought pursuant to 42 U.S.C. § 1983. (D.I. 8.) Defendants filed the instant Motion to Dismiss Plaintiffs' first amended complaint. (D.I. 9.) After having reviewed the parties' submissions and the applicable law, the court will grant the Defendants' motion to dismiss.

## II.  BACKGROUND

On the night of May 26, 2016, Plaintiffs left a restaurant in Rehoboth Beach, Delaware at around 10 p.m. or 11 p.m. (D.I. 8 at ¶ 6-7.)  Plaintiff Jones alleges that the Plaintiffs were separated when Jones walked toward a public restroom and Plaintiff Gray went to look for the phone number for a taxi service.  (D.I. 8 at ¶ 7-8.)  Jones, during that time, was attempting to enter a locked restroom.  (D.I. 8 at ¶ 10.)  Defendant Officer Hara, approached Jones and began to question her. (D.I. 8 at ¶11-14.)  Plaintiffs allege that Jones' need to urinate, her medical history, and age caused her to urinate in her pants at or around the time that she was speaking with Officer Hara.  (D.I. 8 ¶ 13-14.)

After Hara noticed the wet spot in Jones's pants, Defendant Officer Kosiorowski approached.  (D.I. 8 at ¶ 14-15.)  Gray then text messaged Jones.  (D.I. 8 at ¶ 16.)  Officer Kosiorowski, after seeing the text message, called Gray and informed her that they were located by the bandstand.  (D.I. 8 at ¶17-18.)  Gray approached the Officers and Jones in what Plaintiffs describe as a "half running half walking" manner.  (D.I. 8 at ¶ 20.)  Gray explained to Defendants that they were looking for a taxi home or a hotel room. (D.I. 8 at ¶ 22.)  Officer Kosiorowski did not permit the Plaintiffs to call a taxi "because Jones had urinated."  (D.I. 8 at ¶ 24.)  The Officers then put Plaintiffs into a police vehicle and drove them to a Rehoboth Beach Police Department holding cell.  (D.I. 8 ¶ 27.)

While in holding, Plaintiffs attempted to contact someone sober to pick them up, but were both unsuccessful in their efforts.  (D.I. 8 at ¶ 30-31.)  Plaintiffs allege that Defendants worked together to submit an affidavit to a magistrate judge.  (D.I. 8 at ¶ 34.)

2

Defendants submitted an affidavit in support of their request for an arrest warrant for both

Plaintiffs which read as follows:

> Your affiant PTLM HARA can truly state that:
>
> 1. I am a certified seasonal officer employed by the City of Rehoboth Beach since April 2016. I currently hold the rank of Patrolman.
>
> 2. Upon approaching the bandstand on Rehoboth Ave, I witnessed [Jones] kneeling on the sidewalk surrounded in liquid. I approached Jones and witnessed her staggering to rise to her feet. I asked Jones if she needed help, to which she claimed she needed to use the restroom. I notice her shorts around her crotch were wet and asked if she had already urinated, to which she replied she had. I asked if she had anyone she could call to take custody of her due to her level of intoxication. Jones provided the phone number to someone she thought would be able to pick her up, Gray. Jones provided a sample of her breath into a PBT at 2323 hours and a reading of .201 was obtained.
>
> 3. As Gray arrived, PFC Kosiorowski observed [Gray] staggering across the street, Rehoboth Ave, in the area of the bandstand. Upon contact with her a strong odor of alcoholic beverages was evident. Gray provided a sample of her breath into a PBT at 2254 hours and a reading of .227 was obtained. Gray was asked if there was anyone who was sober in the area who could come to pick the two of them up. She called three different people with negative results. These events occurred within the City limits of Rehoboth Beach, Sussex County, Delaware.

(D.I. 10-1 at A03, A07.)

After the arrest warrant was issued at around 1:00 a.m. on the morning of May 27, 2016,

Plaintiffs were placed under arrest and transported to Sussex Correctional Institution. (D.I. 10-1

at A04, A08, D.I. 8 at 32.)

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for

failing to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is

warranted where "it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). The court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

## IV. DISCUSSION

To state a claim under § 1983, the plaintiff must demonstrate that the defendant deprived her of a constitutional right while acting under color of law. *Collins v. Christie*, 337 F. App'x 188, 191 (3d Cir. 2009); *See also Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). The parties do not dispute whether Officer Hara or Officer Kosiorowski acted under color of law, therefore, the relevant inquiry is whether the officers deprived Plaintiffs of their constitutional rights—in this case, whether the officers violated the Plaintiffs' Fourth Amendment rights by submitting a warrant affidavit that was devoid of probable cause.

Defendants urge the court to dismiss Plaintiffs' Amended Complaint because the officers' warrant affidavit was based on sufficient probable cause. Further, Defendants argue that they are protected from Plaintiffs' suit by the doctrine of qualified immunity. Plaintiffs contend that the warrant affidavit contained false statements and omissions that were material to the Magistrate Judge's finding of probable cause. Additionally, Plaintiffs claim Defendants are not protected by the doctrine of qualified immunity because Plaintiffs have alleged a violation of their constitutional rights. The court will address these arguments in turn.

### A. The Warrant Affidavit was Supported by Probable Cause.

Plaintiffs contend that they were arrested without probable cause in violation of their Fourth Amendment right to be free from unreasonable seizure. Plaintiffs acknowledge that they

4

were arrested pursuant to a warrant, but claim that the warrant application was not supported by probable cause from the Defendant officers. Great deference is accorded to a magistrate judge's finding of probable cause and issuance of a warrant. *U.S. v. Leon*, 468 U.S. 897, 914 (1984). An arrest warrant issued by a magistrate judge does not, however, shelter an officer from liability for false arrest. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). In order to succeed in a § 1983 action for false arrest made pursuant to a warrant, the plaintiff must show that, by a preponderance of the evidence: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000). "Only where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable [ ]' will the officer lose the shield of immunity." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The court will focus on the second prong of the analysis as it is dispositive of this case.

The second prong of the *Franks* analysis requires the court to assess whether the statements or omissions made with reckless disregard of the truth were material, or necessary, to the finding of probable cause. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995); *See also Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). A determination of materiality requires the insertion of the missing information and an examination of whether the corrected

warrant affidavit would establish probable case by a preponderance of the evidence. *United States v. Sanchez*, 246 F. App'x 803, 805 (3d Cir. 2007).

In this context, Plaintiffs were suspected of committing—or in the act of committing—disorderly conduct in violation of 11 Del. C. § 1301(1)(f) which states:

> (1) The person intentionally causes public inconvenience, annoyance or alarm to any other person, or creates a risk thereof by:
>
> . . .
>
> (f) Creating a hazardous or physically offensive condition which serves no legitimate purpose . . .

11 Del. C. § 1301(1)(f). Public urination has been held in Delaware to "constitute 'a hazardous or physically offensive condition which serve no legitimate purpose' within the meaning of a violation of" 11 Del. C. §1301(1)(f). *Negron v. State*, 979 A.2d 1111 (Del. 2009).

Plaintiffs argue that the falsely prepared warrant affidavit was missing key elements that would suggest that the officers did not have sufficient probable cause in their warrant affidavit. Plaintiffs suggest that the warrant affidavit should have included that: (1) Jones was standing[1] and attempting to gain entry to a public restroom when she urinated on herself; (2) Gray approached the officers and did not stagger; (3) Jones and Gray were calm and cooperative at all relevant times; (4) Jones and Gray were seeking to retire to a local hotel or take a taxi home; and (5) Plaintiffs did not cause a public disturbance. (D.I. 11 at 9–10.) Plaintiffs suggest that the reconstructed affidavit would read:

---

[1] Tellingly, Plaintiffs do not allege in their Complaint that Jones was standing at the time she encountered Officer Hara. In deciding a motion to dismiss, the court generally considers only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(d); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). Therefore, the court's decision will not consider Jones' argument that she was standing.

Your affiant PTLM HARA can truly state that:

1. I am a certified seasonal officer employed by the City of Rehoboth Beach since April 2016. I currently hold the rank of Patrolman.

2. Upon approaching the bandstand on Rehoboth Ave, I witnessed [Jones] attempting to gain access to a public restroom. I asked Jones if she needed help, to which she claimed she needed to use the restroom. I notice her shorts around her crotch were wet and asked if she had already urinated, to which she replied she had. I asked if she had anyone she could call to take custody of her due to her level of intoxication. Jones provided the phone number to someone she thought would be able to pick her up, Gray. Jones provided a sample of her breath into a PBT at 2323 hours and a reading of .201 was obtained. Jones was calm and cooperative and was not causing a public disturbance. Jones sought to retire to a local hotel or take a taxi to her home.

3. [Gray] approached the bandstand area in response to Kosiorowski's instruction to do the same. Upon contact with her a strong odor of alcoholic beverages was evident. Gray provided a sample of her breath into a PBT at 2254 hours and a reading of .227 was obtained. Gray was asked if there was anyone who was sober in the area who could come to pick the two of them up. She called three different people with negative results. Gray was calm and cooperative and was not causing a public disturbance. Gray sought to retire to a local hotel or take a taxi to her home. These events occurred within the City limits of Rehoboth Beach, Sussex County, Delaware.

(D.I. 11 at 10-11.)

Even with the inclusion of Plaintiffs' additional and clarified facts, a magistrate judge could still have found probable cause to issue an arrest warrant by a preponderance of the evidence. First, regardless whether Jones was standing or kneeling at the time Officer Hara discovered her, Jones admitted to urinating on herself in public after having left a restaurant. Further, the fact that Plaintiffs were cooperative and that they were seeking to retire to a local hotel or take a taxi home does not impact whether Plaintiffs had committed or were in the act of committing the crime of which they were accused. Similarly, including that Gray was "half running half walking" instead of "staggering" does not negate the fact that she smelled strongly of alcoholic beverages and that

7

she blew a preliminary breath test of .227%. Finally, Plaintiffs' assertion that neither party was creating a disturbance is conclusory and, as Defendants correctly note, a legal question left to the Magistrate Judge to determine based on the facts presented in the officers' warrant affidavit. (D.I. 12 at 3.)

Even on the basis of Plaintiffs' reconstructed affidavit, the facts and circumstances known to Officer Hara were "sufficient in themselves to warrant a reasonable person to believe that an offense" had been committed by Jones. *See Orsatti*, 71 F.3d at 483. Thus, the court finds that the officers' warrant affidavit was properly supported by probable cause despite the alleged false statements and omissions.

**B. Defendants are Protected by Qualified Immunity.**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). The appropriate analysis to determine whether qualified immunity applies is whether the plaintiff has established facts that "make out a violation of a constitutional right" and whether that right was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Plaintiffs have not established that the officers violated their constitutional rights. The court has found that the officers' affidavit contained the requisite probable cause needed to supports their warrant application. The court finds that the Defendants did not violate Plaintiffs' constitutional rights and, therefore, are protected by the doctrine of qualified immunity.

## V.    CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss is GRANTED.

Dated: January 23 , 2018

UNITED STATES DISTRICT JUDGE